IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Ferrara, ) | C/A No. 0:09–02112-PMD-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Michael E. Hunt, Sheriff of Aiken County; ) | |
| Aiken County Sheriff's Department; ) | **REPORT AND RECOMMENDATION** |
| Charles Cain in his individual capacity as ) | |
| Deputy Sheriff; Former Second Judicial ) | |
| Circuit Solicitor Barbara R. Morgan; and ) | |
| Brenda R. Brisbin in her individual capacity ) | |
| as Assistant Solicitor with the Second ) | |
| Judicial Circuit, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff, William Ferrara ("Ferrara"), who is self-represented, filed this action alleging violations of his civil rights as well as state law claims. This matter stems from the arrest of Ferrara on July 13, 2006. The remaining defendants in this action are Michael E. Hunt, Sheriff of Aiken County and Charles Cain, Deputy Sheriff of Aiken County. This matter is before the assigned magistrate judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (Docket Entry 58.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Ferrara of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 59.) Ferrara responded in opposition and the defendants filed a reply, which they supplemented with leave of the court. (Docket Entries 64, 69, & 71.) Having carefully reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted in part and denied in part.

# PLAINTIFF'S CLAIMS

The Complaint raises twenty-one causes of action. Ferrara's Seventh and Eighteenth Causes of Action are solely asserted against Defendant Morgan, who has been dismissed from this action. The remaining causes of action are asserted as listed below:

| Cause of Action | Description | Remaining Defendants |
| --- | --- | --- |
| First | § 1983 False Arrest | Defendant Cain |
| Second | Malicious prosecution under the South Carolina Tort Claims Act | Defendants Cain and Hunt |
| Third | § 1983 Malicious Prosecution | Defendants Cain and Hunt |
| Fourth | Civil Conspiracy | Defendant Cain |
| Fifth | Intentional Infliction of Emotional Distress; Outrage | Defendants Cain and Hunt |
| Sixth | Negligent Hiring and Supervision | Defendant Hunt |
| Eighth | § 1983 False Arrest | Defendant Cain |
| Ninth | § 1983 Conspiracy to Violate the Fourth Amendment | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Tenth | § 1985(2) Obstruction of Justice | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Eleventh | § 1985(2) Witness Tampering | Defendant Hunt, individually and officially |
| Twelfth | § 1985(3) Conspiracy | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Thirteenth | § 1986 Conspiracy | Defendant Hunt, individually and officially |
| Fourteenth | Common Law False Imprisonment | Defendants Cain and Hunt |
| Fifteenth | False Arrest and Seizure | Defendant Hunt, individually and officially, and Defendant Cain, individually |

| Sixteenth | § 1983 Supervisory Liability | Defendant Hunt, individually |
| Seventeenth | Obstruction of Justice and Conspiracy | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Nineteenth | § 1983 Unlawful Search | Defendant Cain |
| Twentieth | Defamation | Defendant Hunt |
| Twenty-First | Negligence | Defendant Hunt |

## BACKGROUND

As stated above, Ferrara's claims arise out of his arrest on July 13, 2006 and criminal charges brought against him for: (1) assault and battery of a high and aggravated nature; (2) solicitation of prostitution; (3) disseminating obscenities; and (4) two counts of indecent exposure. Defendant Cain was the investigating and arresting officer. Cain attests that he prepared affidavits and warrant applications based on the following sequence of events. (See generally Cain Aff., Docket Entry 58-3.) Initially, Defendant Cain reviewed a signed statement from Kari Driggers and a report prepared by Deputy Johnson of the Aiken County Sheriff's Department containing allegations of sexual assaults by Ferrara. On July 13, 2006, Defendant Cain met with Driggers to interview her and avers that her claims in his presence were consistent with the claims made to Deputy Johnson. Defendant Cain attests that he prepared a supplemental incident report and Driggers signed a second statement consisting of responses to specific questions asked by Cain. Driggers was renting an apartment from Ferrara and had done some sanding and painting for him in that apartment. Driggers claimed that beginning June 1, 2006, Ferrara approached her on many occasions requesting sex and had fondled her. Driggers reported that Ferrara offered her money or free rent in exchange for sex. Driggers also alleged that Ferrara touched her buttocks and body without her permission. Driggers claimed that she denied all of Ferrara's advances, that he continued to touch her after she told him to stop, and

that she had no visible injuries. Driggers further informed Cain that Ferrara showed her an image of a penis on his cell phone. She also claimed that on two occasions when she was in Ferrara's truck, he exposed himself to her and apparently began masturbating. Driggers also reported that she followed Ferrara to a vacant brick home that he owned in Aiken and once inside, she observed a bed and containers of lotion. Driggers stated that Ferrara again requested sex and she refused.

Cain also attests that Driggers claimed Ferrara asked a neighbor about her whereabouts. Cain obtained a statement from the neighbor, Billy Cook, who claimed that Ferrara asked about Driggers's whereabouts daily. Finally, Cain avers that Driggers informed him that she refused to pay Ferrara rent and that she was "put out," but that he had no knowledge of a pending contested eviction proceeding.

Defendant Cain prepared affidavits containing the above information and applications for arrest warrants based on five charges. Those applications and affidavits were presented to Aiken County Magistrate Patrick Sullivan. Upon review of the arrest warrant applications and the affidavit of Cain, the magistrate found probable cause and issued the warrants. Cain also sought a search warrant for a blue Verizon cellular camera phone based on Driggers's statement that Ferrara used such a phone to display obscenities to her. Cain sought the search warrant based upon his belief that the information in the phone could be relevant to Driggers's claims in several of the arrest warrants. Cain presented an affidavit in support of the search warrant to the magistrate, who then issued the search warrant. Cain avers that he searched Ferrara's home and, with the consent of Ferrara's wife, he searched Ferrara's vehicle. Cain failed to locate the phone.

Ferrara does not appear to dispute that Cain spoke with Driggers, prepared the affidavits, and sought the five arrest warrants and search warrant; rather, he argues that Driggers's claims were invented and that Cain's affidavit was false and consisted of unsupported hearsay. Ferrara also



provides additional facts in opposing summary judgment and asserts that he needs additional discovery to support his allegations. For example, Ferrara states that prior to issuing the arrest warrants, Magistrate Sullivan issued a eviction notice against Driggers on June 28, 2006. Ferrara asserts that Driggers's claims were in retaliation for the eviction proceeding. Ferrara states that Driggers has a history of mental illness and a criminal record, and was known to be an unreliable witness. Further, Ferrara alleges that Deputy Johnson, who initially interviewed Driggers, found her not to be credible and therefore believed there was no probable cause to arrest Ferrara. Ferrara believes Johnson relayed this opinion to Cain. Therefore, Ferrara asserts that Defendant Cain knew or should have known that Driggers's claims were unfounded. Ferrara also contends that discovery will shed additional light on the facts known to Defendant Cain at the time he sought the warrants and disprove the existence of probable cause.

On July 14, 2006, Ferrara was granted a bond with restrictions, including house arrest with electronic monitoring at Ferrara's expense and the seizure of his passport. Ferrara states that on October 11, 2006, a preliminary hearing was held, resulting in the dismissal of the charges for disseminating obscenities and both counts of indecent exposure for lack of probable cause. On October 14, 2008, Ferrara states that a consent order was signed removing the bond conditions of house arrest and electronic monitoring and on October 17, 2008, the remaining charges were dismissed by the State. On March 6, 2009, all the records associated with the charges were expunged.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of

a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

The court previously stayed discovery in this matter pending resolution of the defendants' motion asserting the defense of qualified immunity. In this motion, the defendants argue that they are entitled to summary judgment because (1) probable cause existed for the arrest of Ferrara and the issuance of the search warrant; (2) the defendants are entitled to qualified immunity on Ferrara's federal claims; and (3) many of the plaintiff's state law claims were filed outside the state statute of limitations.[1]

**1.     Probable Cause**

Ferrara raises two types of claims that the defendants argue hinge on the existence or non-existence of probable cause to arrest Ferrara. The first type involves claims that require the plaintiff to demonstrate that the defendants lacked probable cause for the arrest. The second type consists of claims that rely on an underlying cause of action dependant on lack of probable cause for the arrest, such as Ferrara's conspiracy claims. The defendants contend that as probable cause existed for Ferrara's arrest, all of these claims fail as a matter of law. Ferrara disputes this assertion by alleging (1) that the warrants were facially invalid and (2) that Defendant Cain tampered with an incident report or withheld critical information from the magistrate in seeking the warrants.

---

[1] Although there is a stray sentence at the conclusion of the defendants' memorandum in support of summary judgment concerning the alleged lack of personal participation by Defendant Hunt, the defendants have failed to present evidence refuting Ferrara's claims regarding Hunt or move for summary judgment based on his alleged lack of participation in the events at issue. (See Docket Entry 58-1 at 17.)

PJG

To demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007) (internal citations & quotation marks omitted). To demonstrate a "reckless disregard," a plaintiff must show, in light of all of the evidence, that an officer had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. With regard to alleged omissions from an affidavit, a plaintiff must establish that the officer failed to inform the magistrate of facts that the officer knew would negate a finding of probable cause. Id. However, allegations of negligence or honest mistake are insufficient. Id. at 627-28. Additionally, "the false statements or omissions must be material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." Id. at 628 (internal citations and quotation marks omitted). Notably, "[o]btaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991).

Ferrara asserts that discovery is necessary to support his claim that probable cause did not exist because Defendant Cain omitted material facts from his affidavit in support of the warrants. He identifies specific evidence that he believes discovery will reveal that will bear on whether Cain acted with reckless disregard in obtaining the warrants. Accordingly, the court finds that summary judgment is not proper at this time on these claims. See Fed. R. Civ. P. 56(f).

## 2. Qualified Immunity

Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Henry v. Purnell, 501 F.3d 374, 376-77 (4th Cir. 2007). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818, 821.

In determining whether the right violated was clearly established, the court defines the right " 'in light of the specific context of the case, not as a broad general proposition.' " Parrish v. Cleveland, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). Further, "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." Vathekan v. Prince George's County, 154 F.3d 173, 179 (4th Cir. 1998).

Applying these precepts to the facts presented here, the issue becomes whether "a reasonable officer in [Cain's] position could have believed that probable cause existed." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991). In analyzing this issue, the Fourth Circuit has found

PJG

it "noteworthy that two different judicial officers in separate proceedings determined that [an officer] had demonstrated probable cause to support the arrest," as occurred in this case. Id. However, "[o]btaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. Id. at 262. Further, Ferrara disputes that Deputy Johnson's investigation will support Defendant Cain's position that probable cause existed.

As did the plaintiff in Torchinsky, Ferrara argues that Cain cannot rely on the magistrate's probable cause determination because Ferrara contends that Cain omitted relevant information from his application and affidavit. However, unlike the plaintiff in Torchinsky, Ferrara has not been afforded the opportunity to engage in discovery to support this assertion. Cf. id. Ultimately, Ferrara may be unable to support this claim. However, the court finds that if Ferrara can discover evidence to support this assertion, the defendants may not be entitled to qualified immunity on his federal claims alleging that the defendants lacked probable cause for his arrest and the search.[2] Due to the current posture of the case and the disputed facts, the court cannot determine that the defendants are entitled to qualified immunity on his federal claims at this time.

### 3. State Statute of Limitations

The defendants contend that Ferrara's Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, Twentieth, and Twenty-First Causes of Action are barred by the state statute of limitations. The South Carolina Tort Claims Act is the sole and exclusive remedy for certain actions in tort against the state or its officials. S.C. Code Ann. § 15-78-20; see also Flateau v. Harrelson, 584 S.E.2d 413 (S.C. Ct. App. 2003). Claims governed by the Tort Claims Act are generally subject to a two-year limitations period. S.C. Code Ann. § 15-78-110.

---

[2] The Fourth Amendment right to be arrested only on probable cause is clearly established. Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996).

Ferrara's allegations show that the actions about which he complains were taken wholly within the scope of the defendants' official duties. Accordingly, they are barred by the two-year limitations period in the Act. See Flateau v. Harrelson, 584 S.E.2d 413 (S.C. Ct. App. 2003) (concluding that because the allegations in the complaint cover solely actions falling within the scope of the employee's official duties, the Tort Claims Act applies). These claims appear to include: civil conspiracy, intentional infliction of emotional distress, negligent hiring and supervision, common law false imprisonment, false arrest and seizure, obstruction of justice and conspiracy, and negligence. Ferrara filed this action on July 1, 2009 in state court, and the above listed claims arise out of his arrest which occurred on July 13, 2006. Therefore, these claims were filed outside the applicable two-year limitations period.

Ferrara argues that these claims did not arise until the charges were dismissed on October 17, 2008. While a claim for malicious prosecution arises once a favorable termination occurs, the above-described claims stem from his arrest and arise as of the date of the arrest. Compare Law v. South Carolina Dep't of Corr., 629 S.E.2d 642 (S.C. 2006) (listing the elements for malicious prosecution, which includes favorable termination of the judicial proceedings) with Jones by Robinson v. Winn Dixie Greenville, Inc., 456 S.E.2d 429, 432 (S.C. 1995) ("In order to recover under a theory of false imprisonment, the complainant must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful.").

Ferrara also appears to argue that he filed a verified claim and is therefore entitled to a three-year limitations period under the Tort Claims Act. S.C. Code Ann. § 15-78-80. To take advantage of the extended limitations period, a "verified claim" must be filed within one-year of the accrual of the cause of action. Id. Ferrara has failed to provide any support for his contention that he properly filed a verified claim; by contrast, the defendants have submitted the affidavit of Ruth

PJG

Gordy, the Risk Manager of Aiken County, averring that Defendant Hunt was served with a verified claim dated February 12, 2009, which is well over the one-year requirement. Therefore, Ferrara has failed to demonstrate that he is entitled to an extended three-year limitations period.

Finally, Ferrara argues that he should be entitled to equitable tolling. The South Carolina Supreme Court has recently discussed the applicability of equitable tolling to a state statute of limitations. See Hooper v. Ebenezer Sr. Serv. & Rehab. Ctr., 687 S.E.2d 29 (S.C. 2009). The court stated that "[t]he party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify" the use of equitable tolling. Id. at 32. The court held that it may be applied where it is justified under all the circumstances. However, the doctrine of equitable tolling "should be used sparingly and only when the interests of justice compel its use." Id. at 33. In this case, Ferrara argues that he was prevented from timely filing this action "due to circumstances beyond his control resulting from a state imposed disability." ([Docket Entry 64](Docket Entry 64) at 43.) The circumstances and disability that Ferrara appears to reference are the state order of house arrest for one year, six months, and fourteen days, which he alleges prevented him from seeking a civil attorney and from leaving the house to pursue a civil claim. Ferrara alleges that the state courts therefore prevented him from pursuing his civil claims.

The court finds that these circumstances do not warrant equitable tolling. Even if Ferrara could demonstrate that placing him on house arrest somehow prevented him from filing a civil action, over five months of statutory time remained when the circumstances were removed. Further, Ferrara did not file this action until over eleven months after the expiration of the deadline. Accordingly, Ferrara's claims for civil conspiracy, intentional infliction of emotional distress, negligent hiring and supervision, common law false imprisonment, false arrest and seizure, obstruction of justice and conspiracy, and negligence are time barred.

*PJG*

With regard to Ferrara's claim for defamation against Defendant Hunt, the Tort Claims Act does not provide an employee of a governmental entity with immunity for conduct that involved actual malice or intent to harm. S.C. Code Ann. § 15-78-70(b); Flateau, 584 S.E.2d at 419 (stating that § 15-78-70(b) "lifts the immunity normally enjoyed by governmental employees if . . . their actions constitute fraud, malice, an intent to harm, or a crime of moral turpitude). Ferrara's Complaint specifically alleges that Hunt acted with actual malice and deliberate intent to harm. (Compl. ¶¶ 287-88, Docket Entry 1-1 at 70.)

The defendants assert that this claim accrued on July 13, 2006, the date of the initial publication of the allegedly defamatory statement, and it is therefore also time barred. (Docket Entry 58-1 at 16.) Ferrara argues that the defendants' defamation of him is ongoing and is therefore not outside the statute of limitations.[3] The court finds that this claim is insufficiently briefed for the court to make a determination on its timeliness and whether Defendant Hunt is entitled to judgment as a matter of law based on the record currently before the court.

---

[3] The court recognizes that there is a difference of opinion about whether a claim falling within § 15-78-70(b)'s exceptions is governed by the statute of limitations contained in the Tort Claims Act or South Carolina's general statute of limitations for torts. See Smith v. City of Greenwood, C/A No. 8:09-cv-2061-HFF-BHH, 2010 WL 2382479 (D.S.C. June 14, 2010) (unpublished) (rejecting dicta in Flateau suggesting that claims excepted in § 15-78-70(b) are governed by the limitations period in the Tort Claims Act and holding that South Carolina's general statute of limitations applies to such claims). This issue is not determinative of Ferrara's defamation claim, however, because South Carolina's general statute of limitations for a *defamation* claim is the same as that contained in the Tort Claims Act—two years. See S.C. Code Ann. § 15-3-550.

PJG

# RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motion for summary judgment (Docket Entry 58) be granted in part and denied in part. Ferrara's Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action are barred under the South Carolina Tort Claims Act. Therefore, the defendant are entitled to summary judgment on these claims. In light of the limited record before the court and the material factual disputes, summary judgment is not appropriate based on the limited reasons raised in the defendants' motion at this time on Ferrara's First through Third, Eighth through Thirteenth, Sixteenth, and Nineteenth through Twentieth Causes of Action.[4]

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 19, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] If this recommendation is adopted, the court will issue an amended scheduling order providing additional time to complete discovery and for the parties to file dispositive motions.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).