IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2010 DEC 29 A 10: 52

| | |
|---|---|
| William Ferrara, | ) |
| | ) |
| Plaintiff, | ) Case No. 0:09-cv-02112-RMG-PJG |
| | ) |
| v. | ) |
| | ) |
| Michael E. Hunt, Sheriff of Aiken County; | ) **ORDER** |
| Aiken County Sheriff's Department; Charles | ) |
| Cain in his individual capacity as Deputy | ) |
| Sheriff; Former Second Judicial Circuit | ) |
| Solicitor Barbara R. Morgan; and Brenda R. | ) |
| Brisbin in her individual capacity as Assistant | ) |
| Solicitor with the Second Judicial Circuit, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court upon the Magistrate Judge's recommendation that the Motion for Summary Judgment filed by Defendants Michael E. Hunt, Sheriff of Aiken County ("Hunt") and Charles Cain, Deputy Sheriff of Aiken County ("Cain"), be granted in part and denied in part. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within fourteen days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Both Defendants and Plaintiff William Ferrara ("Plaintiff" or "Ferrara") filed objections to the Magistrate Judge's R&R.

**BACKGROUND**

Plaintiff filed the instant action in the Court of Common Pleas of Aiken County on or about July 1, 2009, and Defendants removed the action on or about August 10, 2009. (See Doc.

No. [1].) The instant lawsuit arises out of the arrest of Plaintiff on or about July 13, 2006, and as the Magistrate Judge noted, Defendants Hunt and Cain are the only remaining Defendants in this case. (See Compl. ¶ 45; see also R&R at 1.) Plaintiff's Complaint lists twenty-one causes of action. Because Plaintiff's Seventh and Eighteenth causes of action are against a defendant no longer in the case, Plaintiff "concurs" with the dismissal of these two claims. (See Pl.'s Objections at 2.) The remaining causes of action are set forth in the chart below:

| **Cause of Action** | **Description** | **Remaining Defendants** |
| --- | --- | --- |
| First | § 1983 False Arrest | Defendant Cain |
| Second | Malicious prosecution under the South Carolina Tort Claims Act | Defendants Cain and Hunt |
| Third | § 1983 Malicious Prosecution | Defendants Cain and Hunt |
| Fourth | Civil Conspiracy | Defendant Cain |
| Fifth | Outrage | Defendants Cain and Hunt |
| Sixth | Negligent Hiring and Supervision | Defendant Hunt |
| Eighth | § 1983 False Arrest | Defendant Cain |
| Ninth | § 1983 Conspiracy to Violate the Fourth Amendment | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Tenth | § 1985(2) Obstruction of Justice | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Eleventh | § 1985(2) Witness Tampering | Defendant Hunt, individually and officially |
| Twelfth | § 1985(3) Conspiracy | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Thirteenth | § 1986 Conspiracy | Defendant Hunt, individually and officially |
| Fourteenth | Common Law False Imprisonment | Defendants Cain and Hunt |

| Fifteenth | False Arrest and Seizure | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| --- | --- | --- |
| Sixteenth | § 1983 Supervisory Liability | Defendant Hunt, individually |
| Seventeenth | Obstruction of Justice and Conspiracy | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Nineteenth | § 1983 Unlawful Search | Defendant Cain |
| Twentieth | Defamation | Defendant Hunt |
| Twenty-First | Negligence | Defendant Hunt |

Plaintiff was arrested on July 13, 2006, and criminal charges were brought against him for: (1) assault and battery of a high and aggravated nature; (2) solicitation of prostitution; (3) disseminating obscenities; and (4) two counts of indecent exposure. (See Compl. ¶ 46.) Defendant Cain was the investigating and arresting officer. According to Defendant Cain, he reviewed a report taken by Deputy Johnson and a signed statement from the alleged victim Kari Driggers. (Cain Aff. ¶ 3.) Defendant Cain further states that after reviewing Johnson's report, he interviewed Driggers, and the claims Driggers "made in [his] presence were consistent with the claims made to Deputy Johnson." (Cain Aff. ¶ 3.) Cain also states that he prepared a supplemental incident report and had Driggers sign a second statement, which consisted of a series of pointed questions. (Cain Aff. ¶ 4.) Defendant Cain's Affidavit states, *inter alia*,

> 5. Kari Driggers told me that she was renting an apartment from William Ferrara. She had done some sanding and painting for him in that apartment. She claimed that since June 1, 2006, she had been approached by Ferrara on many occasions requesting sex. She claimed that he offered her $50 cash for sex. She also claimed that he offered her free rent in exchange for sex. She said she denied all advances.
>
> 6. Driggers further claimed that Ferrara had fondled her on several occasions. His advances were unwelcome but continued. She did not claim that she currently had

any visible injury from any of his advances. She claimed that he touched her butt and body without permission after she told him to stop.

7. Driggers also claimed that Ferrara showed her a picture of a male penis on his cell phone. She gave explicit detail about the cell phone. She described it as a blue in color Verizon cellular phone with a camera.

8. Driggers claimed that on two occasions, Ferrara exposed himself to her and apparently began to masterbate. This occurred inside Ferrara's truck.

9. Driggers claimed that she once followed Ferrara to a vacant brick house he owned on Citadel Drive in Aiken. They went inside. Once inside she saw a bed and containers of lotion. Ferrara again requested sex. She refused and left. Finally, she claimed that Ferrara requested her to have sex with him which included bathing.

10. Driggers claimed that she refused to pay Ferrara rent and was apparently put out. I had no knowledge of a pending contested eviction proceeding.

11. Driggers also claimed that Ferrara asked a neighbor about her whereabouts. I interviewed the neighbor and obtained a statement from him. He said that he had lived at the apartment complex for about one month. He claimed that Ferrara asked him daily about the whereabouts of Driggers.

(Cain Aff. ¶¶ 5-11.)

Cain asserts in his Affidavit that "[b]ased upon the information received," he prepared the warrant applications. (Cain Aff. ¶ 12.) Cain states, "Then I proceeded to the Magistrate's office to seek warrants. I presented the matter to Magistrate Patrick Sullivan. Magistrate Sullivan reviewed the warrant applications and the affidavits for each of the five warrants. He found probable cause and issued the warrants sought." (Cain Aff. ¶ 12.) In addition, Cain states that he sought a search warrant for the "blue in color Verizon cellular camera telephone. The existence of that telephone and the photo on that telephone would be evidence to support Driggers['] claims for several of the warrants." (Cain Aff. ¶ 13.) Magistrate Sullivan issued the search warrant, which was limited to searching for the cell phone. (Cain Aff. ¶ 13.) The "Description of

Premises (Person, Place or Thing) To Be Searched" was listed in the affidavit as "The known residence of William . . . Ferrara located at 109 Fox Lea Trail Road, Aiken, Aiken County, S.C." (Doc. No. [64-11].) Under the section entitled "Reason for Affiant's Belief That the Property Sought Is on the Subject Premises," the following appears:

> Between 4-1-06 and 7-11-06 William Ferrara displayed his personal blue in color Verizon cellular camera telephone to the victim Karri Driggers that maintained a still photograph of a male penis. Incidentally, this cellular telephone being kept on the person of William Ferrara during all hours.

(Doc. No. [64-11].) The Return indicates the search occurred on July 13, 2006, but that the item sought was not located. (Doc. No. [64-11]; see also Cain Aff. ¶¶ 13-14.) According to Cain, both the residence and Ferrara's car–with the consent of his wife–were searched but the cell phone was not located. (Cain Aff. ¶ 14.)

As noted by Magistrate Judge Gossett, "Ferrara does not appear to dispute that Cain spoke with Driggers, prepared the affidavits, and sought the five arrest warrants and search warrant. . . ." (R&R at 4.) Plaintiff asserts he, as president and shareholder of Whiskey South, Inc., instituted an eviction proceeding against Kari Driggers for the non-payment of rent on or about June 23, 2006, and the date set for this hearing was July 18, 2006. (See Pl.'s Aff. 2 ¶ 7; Doc. No. [64-2].) According to Plaintiff, Driggers' claims against him were in retaliation for the eviction proceeding. The Plaintiff states, "Plaintiff argues that Cain's charges are not supported by Driggers's unsupported statement as the required elements are not present and not supported by any corroborating evidence." (Pl.'s Objections at 4.) Magistrate Judge Gossett's R&R states,

> Ferrara also provides additional facts in opposing summary judgment and asserts that he needs additional discovery to support his allegations. For example, Ferrara states that prior to issuing the arrest warrants, Magistrate Sullivan issued a eviction notice against Driggers on June 28, 2006. Ferrara asserts that Driggers's

claims were in retaliation for the eviction proceeding. Ferrara states that Driggers has a history of mental illness and a criminal record, and was known to be an unreliable witness. Further, Ferrara alleges that Deputy Johnson, who initially interviewed Driggers, found her not to be credible and therefore believed there was no probable cause to arrest Ferrara. Ferrara believes Johnson relayed this opinion to Cain. Therefore, Ferrara asserts that Defendant Cain knew or should have known that Driggers's claims were unfounded. Ferrara also contends that discovery will shed additional light on the facts known to Defendant Cain at the time he sought the warrants and disprove the existence of probable cause.

(R&R at 4-5.) Plaintiff further asserts that at the bond hearing on July 14, 2006, the prosecutor led the court to believe "that the alleged victim, Kari Driggers, had already moved out of her apartment and was not contesting her pending eviction action . . ." (Carter Aff. at 1; see Doc. No. [64-3].)

Ferrara was granted a bond with restrictions on July 14, 2006; he was placed on house arrest with electronic monitoring at his expense, and his passport was seized.[1] (Doc. No. [64-3].) A preliminary hearing was held on October 11, 2006, on the charges of assault and battery of a high and aggravated nature; disseminating obscenity; and two counts of indecent exposure. (See Doc. No. [64-5].) At this hearing, the State moved to amend the two warrants for indecent exposure and asked that they be changed to violation of South Carolina Code § 16-15-365, exposure of private parts in a lewd manner. (Doc. No. [64-5] at 7.) The prosecutor stated,

> Basically, the difference being that statute doesn't require that exposure to be on a public place. It can be anywhere. The indecent exposure statute requires it to be on public property or within view of public property. And we feel like that element is lacking with regard to the statement made by the victim in this case. But it does comply with § 16-15-365. So we move that both of those warrants be amended.

---

[1] According to Plaintiff, his passport has not yet been returned. (See Pl.'s Objections at 4; see also Doc. No. [64-8].)

(Doc. No. [64-5] at 7.) Defense counsel was also successful in getting the warrant on the charge of disseminating obscenity dismissed. (Doc. No. [64-5] at 25-26.) Also at this hearing, Defendant Cain was asked whether Ms. Driggers mentioned eviction to him; Cain stated, "The only mention of eviction that she told me was that she felt in fear of being evicted, of being thrown out, if she did not comply with his request. That was her–that was the way her message was conveyed to me . . ." (Doc. No. [64-5] at 10.)

A preliminary hearing was held on November 28, 2007, on the charge of solicitation of prostitution. (See Doc. No. [64-6].) At that hearing, Detective Cain testified that he had a statement prepared by Bobbie Jean Murray Barker, which reflected that Ms. Barker was a neighbor to Ms. Driggers. (Doc. No. [64-6] at 3.) Detective Cain testified that Ms. Barker's statement indicated that Ms. Barker used to see Ferrara "come over and harass" Ms. Driggers, and that Ms. Barker heard Ferrara tell Ms. Driggers "that he needed sex or rent money" once. (Doc. No. [64-6] at 3.) The date on Ms. Barker's statement was March 29, 2007, though Defendant Cain testified that he had not met with or talked to Ms. Barker. (Doc. No. [64-6] at 4-5.)

Ferrara asserts that on October 14, 2008, a consent order was signed removing the bond conditions of house arrest and electronic monitoring, and on October 17, 2008, the State dismissed the remaining charges. (Doc. No. [64-9]; Doc. No. [64-11]; [64-1].) These five charges were expunged on March 6, 2009. (See Doc. No. [64-1].) The expungement order stated, in part,

> IT IS ORDERED that all records relating to such arrest and subsequent discharge pursuant to the above-referenced section be dismissed, expunged and immediately destroyed and that no evidence of such records pertaining to such charge shall be retained by any municipal, county or state agency except nonpublic information retained on each person accepted for Pre-Trial Intervention pursuant to § 17-22-

130, nonpublic information retained by SC Law Enforcement Division (SLED) pursuant to § 34-11-90(e), nonpublic information retained by the Department of Narcotic and Dangerous Drugs Under SLED pursuant to § 44-53-450, nonpublic information retained by SLED pursuant to § 22-5-910 and § 22-5-910 and § 22-5-920, and nonpublic information retained by SLED and Department of Public Safety pursuant to § 56-5-750(F).

(Doc. No. [64-1].)

Magistrate Judge Gossett issued an R&R on July 19, 2010, in which she recommended granting in part and denying in part Defendants' Motion for Summary Judgment. (See generally R&R.)[2] Magistrate Judge Gossett recommended granting Defendants' Motion for Summary Judgment on Plaintiff's Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action, concluding those claims were barred under the South Carolina Tort Claims Act (the "Act"). (R&R at 14.) However, Magistrate Judge Gossett recommended denying Defendants' Motion for Summary Judgment on Plaintiff's First through Third, Eighth through Thirteenth, Sixteenth, and Nineteenth through Twentieth Causes of Action. (Id.)

Defendants and Plaintiff filed objections to the Magistrate Judge's R&R.

---

[2]One refrain repeated in Plaintiff's Objections is that the Defendants' Motion for Summary Judgment was deficient because the Defendants filed their Motion on November 2, 2009, "without purported supporting evidence." (Pl.'s Objections at 5.) Plaintiff points to the docket text on Doc. No. [58], which provides, "Modified to add attachment per chambers on 11/18/2009." (Doc. No. [58].) Contrary to Plaintiff's arguments and assertions, nothing in the docket reveals anything improper. The Certificate of Service, signed by Attorney David L. Morrison, indicates the Motion for Summary Judgment, Memorandum in Support, and Affidavit of Charles Cain were placed in the mail to Plaintiff on November 2, 2009. (See Doc. No. [58-2].) The Court therefore finds this oft-repeated objection to be without merit.

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "To overcome a motion for summary judgment, however, the nonmoving party 'may not rely merely on allegations or denials in its own pleading' but must 'set out specific facts showing a genuine issue for trial.'" The News & Observer, 597 F.3d at 576 (quoting FED. R. CIV. P. 56(e).

### B. Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and the objections, the Court finds that the Magistrate

Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R.

## OBJECTIONS

### A. Plaintiff's Objections[3]

As noted above, Plaintiff objects to the Magistrate Judge's recommendation that Defendants' Motion for Summary Judgment be granted as to his Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action. (Pl.'s Objections at 2.) Plaintiff's substantive objection is his objection to the Magistrate Judge's conclusion that the above claims are barred by the two-year statute of limitations in the Tort Claims Act and that Plaintiff is not entitled to equitable tolling. (Pl.'s Objections at 12-16.)

In the R&R, Magistrate Judge Gossett concluded that Plaintiff's Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action are barred by the two-year statute of limitations set forth in the South Carolina Tort Claims Act. (See R&R at 10-11.) The Magistrate Judge also addressed Plaintiff's argument that he is entitled to a three-year limitations period because he filed a verified claim. (Id. at 11.) The R&R states,

> To take advantage of the extended limitations period, a "verified claim" must be filed within one-year of the accrual of the cause of action. . . . Ferrara has failed to provide any support for his contention that he properly filed a verified claim; by contrast, the defendants have submitted the affidavit of Ruth Gordy, the Risk Manager of Aiken County, averring that Defendant Hunt was served with a verified claim dated February 12, 2009, which is well over the one-year requirement. Therefore, Ferrara has failed to demonstrate that he is entitled to an extended three-year limitations period.

(R&R at 11-12.)

---

[3]Plaintiff objected to the Magistrate Judge's recitation of the facts. The Court has reviewed those Objections and made any corrections deemed appropriate.

The Magistrate Judge also addressed Plaintiff's argument that he is entitled to equitable tolling. (R&R at 12-13.) The R&R states,

> In this case, Ferrara argues that he was prevented from timely filing this action "due to circumstances beyond his control resulting from a state imposed disability." (Docket Entry 64 at 43.) The circumstances and disability that Ferrara appears to reference are the state order of house arrest for one year, six months, and fourteen days, which he alleges prevented him from seeking a civil attorney and from leaving the house to pursue a civil claim. Ferrara alleges that the state courts therefore prevented him from pursuing his civil claims.
> The court finds that these circumstances do not warrant equitable tolling. Even if Ferrara could demonstrate that placing him on house arrest somehow prevented him from filing a civil action, over five months of statutory time remained when the circumstances were removed. Further, Ferrara did not file this action until over eleven months after the expiration of the deadline. Accordingly, Ferrara's claims for civil conspiracy, intentional infliction of emotional distress, negligent hiring and supervision, common law false imprisonment, false arrest and seizure, obstruction of justice and conspiracy, and negligence are time barred.

(R&R at 12.)

In his Objections, Plaintiff again asserts that because he filed a verified claim, the at-issue statue of limitations is three years. (See Pl.'s Objections at 12.) Plaintiff is correct that in his Complaint, he alleged that he filed a "verified written claim" with the South Carolina State Budget and Control Board, the South Carolina Attorney General, the Second Judicial Circuit Solicitor of South Carolina, and the Sheriff of Aiken County. (Compl. ¶¶ 105-06; [Doc. No. [64-1].) In their Answer, Defendants "[a]dmitted that Plaintiff filed a verified claim with the named entities in the sum of Sixty Thousand ($60,000.00) Dollars." (Ans. at 14.)

What Plaintiff fails to address in his Objections is the Magistrate Judge's determination that his verified claim was not timely. Pursuant to South Carolina Code Section 15-78-80, "[i]f filed, the [verified] claim must be received within one year after the loss was or should have been discovered." S.C. CODE ANN. § 15-78-80(d). The at-issue arrest occurred on July 13, 2006, and

Defendants presented evidence that Plaintiff filed his verified claim on February 12, 2009, which, as the Magistrate Judge noted, is "well over the one-year requirement." (R&R at 12.) Plaintiff's filing of an untimely verified claim does not extend the statute of limitations, and Plaintiff's objection is without merit.[4]

Plaintiff next argues that he is entitled to equitable tolling. (Pl.'s Objections at 12.) Plaintiff again re-asserts his argument that he "is entitled to equitable tolling due to special circumstances to include the fact that he was subjected to 24/7 electronic GPS monitoring at his own expense for twenty seven (27) months . . . ." (Pl.'s Objections at 12.) Ferrara further asserts that equitable tolling is appropriate because he "was never formally charged nor indicted over a twenty seven (27) month period of time while enduring this sham prosecution of several pending but unfounded misdemeanor warrants." (Pl.'s Objections at 13.) Plaintiff states,

> The first preliminary hearing was on October 11, 2006 and the unindicted false warrants were dismissed on October 17, 2008. The Plaintiff cannot be expected to have divided but yet focused loyalties between a pending unjust criminal matter as well as pursue a civil action particularly when dealing with such unscrupulous law enforcement officers and prosecutors prior to favorable termination of an unfounded and unsupported bogus criminal case. In all likelihood the innocent Plaintiff would still be wearing and paying for an electronic GPS monitor ($498/month) based on the Defendants' record of malicious prosecution if he had submitted a verified claim or initiated civil action against the Defendants prior to favorable termination of their bogus criminal case.

(Pl.'s Objections at 14.)

---

[4]Plaintiff also asserts that "Defendants although having the opportunity to do so did not amend their answer . . . based on the defense that the state causes of action are time barred due to the statute of limitations." (Pl.'s Objections at 12.) This objection is without merit, as Defendants plainly asserted a statute of limitations defense in their Answer, which was filed on October 10, 2009. (See Ans. at 4; Doc. No. [2].)

As the Magistrate Judge noted, the South Carolina Supreme Court recently found equitable tolling to be appropriate where a plaintiff was expending significant efforts to serve a defendant within the statutory period but was unable to do so because, *inter alia*, the defendant had failed to name a viable registered agent with the South Carolina Secretary of State as required by state law. See Hooper v. Ebeneezer Senior Servs. & Rehab. Ctr., 386 S.C. 108, 687 S.E.2d 29 (2009). The South Carolina Supreme Court noted that "[t]he party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use" and that "[i]t has been observed that equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." Id. at 115-16, 687 S.E.2d at 32 (internal quotation marks omitted). Although the court declined to provide "an exclusive list of circumstances that justify the application of equitable tolling," "equitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use." Id. at 116-17, 687 S.E.2d at 33. In Hooper, equitable tolling was held appropriate because

> [i]n this case, Hooper first tried to effect service upon the agent named by Ebenezer at the address it supplied to the Secretary of State. When that was unsuccessful, Hooper hired a private investigator, who found a personal address for the agent. Hooper contacted the Lexington County Sheriff's Department on numerous occasions and was told that service was being made. She was not notified until one month after the running of the statute of the limitations that service had been unsuccessful because the whereabouts of the agent could not be determined.
> 
> Hooper finally was able to effect service after the statute of limitations had run, only after she exercised reasonable and due diligence to serve Ebenezer's agent. Under Rule 3(a)(2), SCRCP, even if the limitations period has run, service may still be effected if it is accomplished within 120 days of filing of the summons and complaint. Unfortunately, Hooper was approximately one week past the 120 days. Thus, under the unique circumstances of this case, we conclude

it is appropriate to equitably toll the statute of limitations for the time Hooper spent in pursuit of Ebenezer's nonexistent agent.

Id. at 118-19, 687 S.E.2d at 34.

In the case *sub judice*, Plaintiff was arrested on July 13, 2006, and on October 17, 2008, the State dismissed all charges against him. Plaintiff filed the instant action on July 1, 2009, just eleven days shy of the three-year "anniversary" of his arrest. Unlike in Hooper, Plaintiff does not appear to have encountered great difficulty in serving Defendants, as the instant action was filed in state court on July 1, 2009, and Defendants filed a Notice of Removal and Answer on August 10, 2009, a mere forty (40) days after the Complaint was filed. Furthermore, the plaintiff in Hooper was outside the statute of limitations by one week. In the case *sub judice*, Plaintiff missed the deadline by a few days short of one year. Because the Magistrate Judge properly determined Plaintiff was not entitled to equitable tolling, the Court concludes that Plaintiff's objection is without merit. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to the Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action.

## B. Defendants' Objections

Defendants object to the Magistrate Judge's recommendation that their Motion for Summary Judgment be denied with respect to Ferrara's claims dependent on the existence or non-existence of probable cause: the First through Third, Eighth through Thirteenth, Sixteenth, and Nineteenth through Twentieth Causes of Action. (Defs.' Objections at 1.) More specifically, Defendants object to the Magistrate Judge's recommendation that their Motion for Summary

Judgment be denied as to those causes of action on their claim of qualified immunity. (Defs.' Objections at 1, 5.) Defendants state,

> The Magistrate Judge points out that the Plaintiff disputes that probable cause existed upon two grounds; (1) that the warrants were facially invalid and (2) that Cain tampered with an incident report or withheld critical information from the Magistrate. Neither of those grounds is sufficient to overcome these Defendants['] qualified immunity.

(Defs.' Objections at 1.) Defendant asserts there has been "no showing at all that the warrants were facially invalid"; "[t]he allegation that administrative information was left off the inidentt report does not negate the existence of probable cause"; and "[e]ven if all information of which Plaintiff complains had been provided to the Magistrate, that would not negate the existence of probable cause." (Defs.' Objections at 1, 2.) According to Defendants, "[e]ven if the probable cause issue becomes a close [sic] due to the reliability of the informant, the Defendants are still entitled to qualified immunity. It is certainly not clearly established that there was no probable cause." (Defs.' Objections at 2.)

Qualified immunity is "a doctrine which shields government actors from liability if they establish either that (1) the plaintiff's allegations fail to make out a violation of a constitutional right, or (2) the right at issue was not clearly established at the time of the alleged misconduct." Henry v. Purnell, —F.3d—, 2010 WL 3720411, at *7 (4th Cir. Sept. 24, 2010) (citing Pearson v. Callahan, —U.S.—, 129 S.Ct. 808 (2009)). In short, the doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 129 S.Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As the Magistrate Judge noted, to resolve a qualified immunity defense, a court must "decide whether the facts that a

Judgment be denied as to those causes of action on their claim of qualified immunity. (Defs.' Objections at 1, 5.) Defendants state,

> The Magistrate Judge points out that the Plaintiff disputes that probable cause existed upon two grounds; (1) that the warrants were facially invalid and (2) that Cain tampered with an incident report or withheld critical information from the Magistrate. Neither of those grounds is sufficient to overcome these Defendants['] qualified immunity.

(Defs.' Objections at 1.) Defendant asserts there has been "no showing at all that the warrants were facially invalid"; "[t]he allegation that administrative information was left off the inidentt report does not negate the existence of probable cause"; and "[e]ven if all information of which Plaintiff complains had been provided to the Magistrate, that would not negate the existence of probable cause." (Defs.' Objections at 1, 2.) According to Defendants, "[e]ven if the probable cause issue becomes a close [sic] due to the reliability of the informant, the Defendants are still entitled to qualified immunity. It is certainly not clearly established that there was no probable cause." (Defs.' Objections at 2.)

Qualified immunity is "a doctrine which shields government actors from liability if they establish either that (1) the plaintiff's allegations fail to make out a violation of a constitutional right, or (2) the right at issue was not clearly established at the time of the alleged misconduct." Henry v. Purnell, —F.3d—, 2010 WL 3720411, at *7 (4th Cir. Sept. 24, 2010) (citing Pearson v. Callahan, —U.S.—, 129 S.Ct. 808 (2009)). In short, the doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 129 S.Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As the Magistrate Judge noted, to resolve a qualified immunity defense, a court must "decide whether the facts that a

Judgment be denied as to those causes of action on their claim of qualified immunity. (Defs.' Objections at 1, 5.) Defendants state,

> The Magistrate Judge points out that the Plaintiff disputes that probable cause existed upon two grounds; (1) that the warrants were facially invalid and (2) that Cain tampered with an incident report or withheld critical information from the Magistrate. Neither of those grounds is sufficient to overcome these Defendants['] qualified immunity.

(Defs.' Objections at 1.) Defendant asserts there has been "no showing at all that the warrants were facially invalid"; "[t]he allegation that administrative information was left off the inidentt report does not negate the existence of probable cause"; and "[e]ven if all information of which Plaintiff complains had been provided to the Magistrate, that would not negate the existence of probable cause." (Defs.' Objections at 1, 2.) According to Defendants, "[e]ven if the probable cause issue becomes a close [sic] due to the reliability of the informant, the Defendants are still entitled to qualified immunity. It is certainly not clearly established that there was no probable cause." (Defs.' Objections at 2.)

Qualified immunity is "a doctrine which shields government actors from liability if they establish either that (1) the plaintiff's allegations fail to make out a violation of a constitutional right, or (2) the right at issue was not clearly established at the time of the alleged misconduct." Henry v. Purnell, —F.3d—, 2010 WL 3720411, at *7 (4th Cir. Sept. 24, 2010) (citing Pearson v. Callahan, —U.S.—, 129 S.Ct. 808 (2009)). In short, the doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 129 S.Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As the Magistrate Judge noted, to resolve a qualified immunity defense, a court must "decide whether the facts that a

plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." Pearson, 129 S.Ct. at 815-16. The court must then determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816. Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818, 821. Furthermore,

> "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992) (citing Tarantino v. Baker, 825 F.2d 772, 774-75 (4th Cir.1987), cert. denied, 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989)), cert. denied, --- U.S. ----, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. Tarantino, 825 F.2d at 775.

Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994).

Contrary to Defendants' arguments, they are not entitled to summary judgment at this stage, when little to no discovery has been done. Taking, as the Court must, the facts in the light most favorable to the Plaintiff, there is a genuine issue of material fact as to whether probable cause existed. As Magistrate Judge Gossett noted in her Report and Recommendation, Ferrara has presented evidence that prior to issuing the arrest warrants, Magistrate Sullivan issued an eviction notice against Driggers on June 28, 2006, and that Driggers filed the false claims against him a short time later, such that he was arrested on or about July 13, 2006, when the eviction hearing was scheduled for July 18, 2006. According to Ferrara, Driggers' claims were in retaliation for the eviction proceeding.

Ferrara alleges that Driggers "was known by Defendants to have a criminal history and lack of credibility." (Compl. ¶ 35.) According to Ferrara, Deputy Johnson responded to Driggers' call on "July 12, 2006, six days prior to her scheduled eviction action," and Deputy Johnson "stated to the Plaintiff and/or his two painters that he could not understand anything she [(Driggers)] was saying only that she was upset because she was being evicted." (Compl. ¶ 36.) Ferrara further alleges that on July 13, 2006, "Defendant Cain talked to William Clements and Josh Justice who were painting an apartment at 2860 Banks Mill Road. They informed him that Kari Driggers was being evicted by the Plaintiff." (Compl. ¶ 39.) Ferrara alleges that "on or about July 13, 2006, Kari Driggers informed Defendant Cain that she was being evicted." (Compl. ¶ 42.) Plaintiff further states in his Complaint,

> Upon information and belief on or about July 13, 2006 Summary Court Judge Patrick Sullivan, upon sworn affidavit from Defendant Cain, issued five arrest warrants and one search warrant against the Plaintiff. Being very familiar with Kari Driggers from past experience and cases in his court, he was misled by Defendant Cain into believing that Kari Driggers had moved out of her apartment and would not contest the pending eviction action in his court, although Defendant Cain observed her personal belongings still in the apartment. By misleading Summary Court Judge Patrick Sullivan into believing the eviction action was uncontested and the alleged victim had already moved out of her apartment Defendant Cain was able to effectively remove the probable motive of revenge against the Plaintiff for bringing the pending civil action against the alleged victim for nonpayment of rent, which enabled him to persuade the court to issue these false and unfounded warrants lacking probable cause.

(Compl. ¶ 44.) According to Plaintiff, the "Defendants knew at the time [of Plaintiff's arrest] that the charges were unfounded and blatantly illegal . . ." (Compl. ¶ 47.)

Although the instant motion is a Motion for Summary Judgment, no discovery has taken place, and Plaintiff seeks denial of the motion pursuant to Rule 56(f). See FED. R. CIV. P. 56(f). The Court concludes that Plaintiff's Complaint does state a claim upon which relief can be

granted with respect to the following claims: the First through Third, Eighth through Thirteenth, Sixteenth, and Nineteenth through Twentieth Causes of Action. In light of this conclusion, along with Plaintiff's request pursuant to Rule 56(f), the Court agrees with the Magistrate Judge: Defendants' Motion for Summary Judgment is denied with respect to these claims.[5] This denial of Defendants' Motion for Summary Judgment is without prejudice. Upon completion of discovery, Defendants may again move for summary judgment.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is granted with respect to the Fourth, Fifth, Sixth, Fourteenth, Fifteenth, Seventeenth, and Twenty-First Causes of Action. Defendants' motion is denied with respect to the following claims: the First through Third, Eighth through Thirteenth, Sixteenth, and Nineteenth through Twentieth Causes of Action. In addition, Plaintiff's Seventh and Eighteenth causes of action are **DISMISSED**.

**AND IT IS SO ORDERED**.

The Honorable Richard Mark Gergel
United States District Judge

**Charleston, South Carolina**
**December 2̲5̲, 2010**

---

[5]Defendants assert they are entitled to qualified immunity because "[i]t is certainly not clearly established that there was no probable cause." (Defs.' Objections at 2.) The Court concludes that, in light of the material disputes in fact, Defendants are not entitled to qualified immunity at this time. If Plaintiff is able to produce evidence that supports his version of the facts, the Court concludes Defendants would not be entitled to qualified immunity.