IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Ferrara,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Michael E. Hunt, Sheriff of Aiken County;<br>Charles Cain in his individual capacity as<br>Deputy Sheriff,<br><br>　　　　Defendants. | C/A No. 0:09-02112-RMG-PJG<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

This matter stems from the arrest of the plaintiff, William Ferrara ("Ferrara"), on July 13, 2006. Ferrara filed this action, as a self-represented plaintiff, in the Court of Common Pleas of Aiken County on or about July 1, 2009, alleging violations of his civil rights as well as state law claims. The defendants removed the case. By order dated December 29, 2010, the Honorable Richard Mark Gergel, United States District Judge, granted partial summary judgment with leave to refile dispositive motions after the parties had had the opportunity to engage in discovery. (ECF No. 89.) Ferrara retained counsel and the parties have now completed discovery. This matter is before the assigned magistrate judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motions for summary judgment as to the remaining claims. (ECF Nos. 140 & 145.) Ferrara responded in opposition to the defendants' motions (ECF No. 149) and Defendant Cain filed a reply (ECF No. 151). Having carefully reviewed the parties' submissions and the applicable law, the court finds that summary judgment should be granted as to all claims except the defamation claim against Defendant Hunt.

# PLAINTIFF'S CLAIMS

Following Judge Gergel's order, the following claims remain before the court.

| Cause of Action | Description | Remaining Defendants |
|---|---|---|
| First | § 1983 False Arrest | Defendant Cain |
| Second | Malicious prosecution under the South Carolina Tort Claims Act | Defendants Cain and Hunt |
| Third | § 1983 Malicious Prosecution | Defendants Cain and Hunt |
| Eighth | § 1983 False Arrest | Defendant Cain |
| Ninth | § 1983 Conspiracy to Violate the Fourth Amendment | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Tenth | § 1985(2) Obstruction of Justice | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Eleventh | § 1985(2) Witness Tampering | Defendant Hunt, individually and officially |
| Twelfth | § 1985(3) Conspiracy | Defendant Hunt, individually and officially, and Defendant Cain, individually |
| Thirteenth | § 1986 Conspiracy | Defendant Hunt, individually and officially |
| Sixteenth | § 1983 Supervisory Liability | Defendant Hunt, individually |
| Nineteenth | § 1983 Unlawful Search | Defendant Cain |
| Twentieth | Defamation | Defendant Hunt |

Discovery having been completed, the defendants have filed motions with regard to all remaining claims. In his memorandum in opposition, Ferrara fails to address the defendants' motions with regard to his claim of a § 1983 conspiracy or his claims pursuant to §§ 1985 and 1986. Additionally, he advances no argument opposing the defendants' motions with regard to the reasonableness of the searches of his residence and vehicle. The court therefore finds Ferrara has not met his burden in

response to the defendants' evidence and argument with regard to his Ninth through Thirteenth and Nineteenth causes of actions and deems these claims to be abandoned.

## BACKGROUND

The court's previous Report and Recommendation contained a summary of the pertinent facts. For convenience, the court repeats it here, with some minor additions that are either based on additional discovery conducted by the parties or are pertinent to the issues raised in the instant motions.

Ferrara is a retired nuclear engineer and former Aiken County Councilman who owns a real estate company, Whiskey South, Inc., through which he managed an apartment complex at 2680 Banks Mill Road in Aiken. Kari Driggers was a tenant at the complex. Ferrara's claims arise out of his arrest on July 13, 2006 and criminal charges brought against him, based on allegations by Driggers, for: (1) assault and battery of a high and aggravated nature; (2) solicitation of prostitution; (3) disseminating obscenities; and (4) two counts of indecent exposure. Defendant Cain was the investigating and arresting officer. Cain attests that he prepared affidavits and warrant applications based on the following sequence of events. (See generally Cain Aff., ECF No. 58-3.) Initially, Defendant Cain reviewed a signed statement from Kari Driggers and a report prepared by Deputy Johnson of the Aiken County Sheriff's Department containing allegations of sexual assaults by Ferrara. On July 13, 2006, Defendant Cain met with Driggers to interview her and avers that her claims in his presence were consistent with the claims made to Deputy Johnson. Defendant Cain prepared a supplemental incident report, which Driggers signed. Driggers also signed an additional statement consisting of responses to specific questions asked by Cain.

Driggers was renting an apartment from Ferrara and had done some sanding and painting for him in that apartment. Driggers claimed that beginning April 1, 2006, Ferrara approached her on

many occasions requesting sex and had fondled her. Driggers reported that Ferrara offered her money or free rent in exchange for sex. Driggers also alleged that Ferrara touched her buttocks and body without her permission. Driggers claimed that she denied all of Ferrara's advances, that he continued to touch her after she told him to stop, and that she had no visible injuries. Driggers further informed Cain that Ferrara showed her an image of a penis on his cell phone. She also claimed that on two occasions when she was in Ferrara's truck, he exposed himself to her and apparently began masturbating. Driggers also reported that she followed Ferrara to a vacant brick home that he owned in Aiken and once inside, she observed a bed and containers of lotion. Driggers stated that Ferrara again requested sex and she refused.

According to Cain, Driggers also claimed Ferrara asked a neighbor about her whereabouts. Cain obtained a statement from the neighbor, Billy Cook,[1] who claimed that Ferrara asked about Driggers's whereabouts daily. Finally, Cain avers that Driggers informed him that she refused to pay Ferrara rent and that she was "put out," but that Cain had no knowledge of a pending contested eviction proceeding.

Defendant Cain prepared affidavits containing the above information and applications for arrest warrants based on five charges. Those applications and affidavits were presented to Aiken County Magistrate Patrick Sullivan. Upon review of the arrest warrant applications and the affidavits of Cain, the magistrate found probable cause and issued the warrants. Cain also sought a search warrant for a blue Verizon cellular camera phone based on Driggers's statement that Ferrara used such a phone to display obscenities to her. Cain sought the search warrant based upon his belief that the information in the phone could be relevant to Driggers's claims in several of the arrest

---

[1] The parties appear to dispute whether Cook had some type of romantic relationship with Driggers.

PJG

warrants. Cain presented an affidavit in support of the search warrant to the magistrate, who then issued the search warrant. Cain avers that he searched Ferrara's home and, with the consent of Ferrara's wife, he searched Ferrara's vehicle. Cain failed to locate the phone.

On July 14, 2006, Ferrara was granted a bond with restrictions, including house arrest with electronic monitoring at Ferrara's expense and the seizure of his passport. On October 11, 2006, a preliminary hearing was held. On motion of the State, the two charges for indecent exposure were amended to a charge of exposure of private parts in a lewd manner pursuant to S.C. Code § 16-15-365 to account for the exposures being alleged inside a vehicle. Aiken County Magistrate Sheridan Lynn dismissed the obscenity charge but found probable cause for the amended charges and for the charge of assault and battery of a high and aggravated nature. On November 28, 2007, Magistrate Lynn held a preliminary hearing on the solicitation of prostitution charge and found probable cause. On October 14, 2008, a consent order was signed removing the bond conditions of house arrest and electronic monitoring and on October 17, 2008, the remaining charges were dismissed by the State. On March 6, 2009, all the records associated with the charges were expunged. Despite the expungement order, a press release that had been issued and posted on the Aiken County Sheriff's Department website remained available to the public until approximately the fall of 2011 when Ferrara was deposed in connection with the instant action. The press release stated, in part, as follows: "Since April 1, the subject has repeatedly fondled the victim. The subject has also offered the victim free rent or money in exchange for sexual relations. Investigators learned the subject exposed himself to the victim and displayed obscene photographs on a cellular telephone to the victim, as well." (ECF No. 149-8 at 2.) The arrest and allegations were publicized in the print and electronic media.

# DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e).

**B.      Defendant Cain**

To prevail on any claim pursuant to § 1983, a plaintiff must show: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States; (3) by a person acting under color of state law. See 42 U.S.C. § 1983.

*PJG*

Defendant Cain argues that Ferrara has failed to offer evidence to show that Cain, in the performance of his duties as a deputy sheriff, deprived Ferrara of the constitutional rights alleged, and even if such a deprivation has occurred, Cain is entitled to qualified immunity.

Most of Ferrara's remaining claims turn on the existence of probable cause for his arrest.[2] Ferrara's claims arise under the Fourth Amendment, which prohibits law enforcement officers from making unreasonable searches and seizures of persons or property. See U.S. Const. amend. IV.[3] To demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007) (internal citations and quotation marks omitted). To demonstrate a "reckless disregard," a plaintiff must show, in light of all of the evidence, that an officer had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. With regard to alleged omissions from an affidavit, a plaintiff must establish that the officer failed to inform the magistrate of facts that the officer knew would negate a finding of probable cause. Id. However, allegations of negligence or

---

[2] It appears the probable cause determination is crucial to Ferrara's state common law claim for malicious prosecution as well as the constitutional violations that Ferrara alleges in his Complaint as his First and Eighth Causes of Action for § 1983 False Arrest, and the Second Cause of Action for § 1983 Malicious Prosecution. See McBride v. Sch. Dist. of Greenville Cnty., 698 S.E.2d 845, 855 (S.C. Ct. App. 2010). Thus, for the reasons stated herein, the defendants are entitled to summary judgment on the state law malicious prosecution claim as well as any such claim arising under § 1983.

[3] To the extent that Ferrara's Complaint and Response Brief allege or contend that his arrest and prosecution also violated his rights under the Fourteenth Amendment, an arrestee's § 1983 claim that he was prosecuted without probable cause cannot be based on substantive due process. See Albright v. Oliver, 510 U.S. 266 (1994).



honest mistake are insufficient. Id. at 627-28. Additionally, "the false statements or omissions must be material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." Id. at 628 (internal citations and quotation marks omitted). Notably, "[o]btaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991).

The parties agree that the instant motions turn on whether Defendant Cain had probable cause to seek an arrest warrant against Ferrara. (See, e.g., Pl.'s Mem. Opp'n Summ. J. at 6, ECF No. 149 at 6.) Regardless of whether probable cause existed, the court finds that the facts as developed on the now complete record show that Cain is entitled to qualified immunity.

Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lefemine v. Wideman, Nos. 10-1905 & 10-2014, ___ F.3d ___, 2012 WL 691434, at *3 (4th Cir. Mar. 5, 2012). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In determining whether the right violated was clearly established, the court defines the right " 'in light of the specific context of the case, not as a broad general proposition.' " Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear

to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). In analyzing this prong, a court in this district generally must look only to case law from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court. Lefemine, 2012 WL 691434, at *4. In the specific context of qualified immunity regarding a § 1983 claim asserting an unlawful arrest without probable cause, the Fourth Circuit has held that although the right to be free from arrests without probable cause is clearly established, the circumstances in the particular case must be considered: the right allegedly violated must be defined not at such a high level of generality, but rather in light of the facts confronting the officer at the time. McKinney v. Richland Cnty. Sheriff's Dep't, 431 F.3d 415, 419 n.5 (4th Cir. 2005); see also Lefemine, 2012 WL 691434, at *4.[4]

Ferrara's argument that Cain lacked probable cause for his arrest is wholly based on his contention that Cain was constitutionally required to obtain evidence corroborating Driggers's statement before seeking an arrest warrant. The case law upon which Ferrara relies, however, is inapposite, as it addresses probable cause in the context of informants, not victims.[5] See, e.g., Illinois v. Gates, 462 U.S. 213 (1983) (discussing the veracity, reliability, and basis of knowledge of an *informant* as relevant factors to a probable cause determination). Unlike the instant case, the information provided to law enforcement in Gates came from an *anonymous informant*, not a victim witness.

---

[4] The court observes that while qualified immunity should generally be determined as soon as practicable, discovery may sometimes be necessary, as it was in this case, to define the right at issue at the proper level of specificity.

[5] Defendant Cain points out that Ferrara uses the word "informant" fourteen times in his opposition memorandum.

PJG

Courts have recognized that the complaint of a single witness or putative victim alone is generally sufficient to establish probable cause. Beauchamp v. City of Noblesville, Indiana, 320 F.3d 733, 743 (7th Cir. 2003). If, however, the complaint would lead a reasonable officer to be suspicious, he has a duty to investigate further. Id. In determining whether information submitted to a judicial officer for a warrant was sufficient to establish probable cause, a court should look only at what the officer knew at the time he sought the warrant, not how things turned out in hindsight. Id. "[I]n crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth."[6] Id.; see also Gates, 462 U.S. at 240 (rejecting the dissent's position that probable cause should not be found "unless there is some assurance that the information on which [it] is based has been obtained in a reliable way by an honest or credible person" in favor of a totality-of-the-circumstances test for probable cause).

Precedent in this judicial circuit appears to track these principles. Facing somewhat similar facts to those in this case, the United States Court of Appeals for the Fourth Circuit reversed a district court's finding that probable cause was lacking where a law enforcement officer investigating a complaint that a school teacher had assaulted a student failed to visit the crime scene, did not interview anyone other than the victim and her mother, failed to attend a meeting with the school district's attorney, and failed to return calls from the school district's attorney and the school principal. McKinney, 431 F.3d 415. The McKinney Court held that the district court's finding that

---

[6] For example, the Seventh Circuit has observed that identification given by a "lucid" victim would likely establish probable cause, while noting that a " 'prudent' officer may balk . . . if the person leveling the accusation is babbling or inconsistent." Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994) (citations omitted). This is not to say that interviews and investigations are irrelevant to the probable cause analysis, but they are not prerequisites. Id.

the officer conducted an inadequate investigation did not negate the probable cause established by the victim's identification of McKinney as her attacker. Id. at 418-19. Further, the Fourth Circuit determined that no evidence existed that the officer was even aware of the exculpatory evidence the district court discussed, much less that he ignored it. Id. at 419. The court went on to observe that although "an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." Id. (quoting Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000)).

The Fourth Circuit has repeatedly suggested that police officers may reasonably rely on a victim's accusation, even if it later turns out to be wrong. "Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." McKinney, 431 F.3d at 418 (quoting Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991)). In fact, in a § 1983 case involving an arrest alleged to have been made without probable cause, the Fourth Circuit found that an officer was protected by qualified immunity even where the victim gave three different accounts of how he obtained his injuries and the officer did not interview the accused persons before arresting them. See Torchinsky, 942 F.2d 257.

Ferrara's attacks on Driggers's credibility fail to show that Cain unreasonably relied on Driggers's accusations and therefore lacked probable cause to seek a warrant. Ferrara has identified nothing about Driggers's complaints about Ferrara that make them questionable on their face at the time Cain sought the warrant. Although he attempts to portray Driggers as an unsavory character, he cites no authority requiring an officer to conduct a criminal records check on every putative victim of a crime. Cf. Beauchamp, 320 F.3d at 744-45. Regarding the evidence pertaining to Ferrara's eviction of Driggers, the court cannot say that the evidence known to Cain at the time he sought the

PJG

warrant negates probable cause. The court observes that Cain repeatedly denied that he knew of a pending contested eviction proceeding.[7] Contrary to Ferrara's suggestion, the fact that he saw moving boxes in Driggers's apartment and that she told him she had been "put out" is insufficient to show that Cain lied or intentionally withheld material information from the magistrate when seeking the warrant. Further, even if Cain specifically knew of the pending eviction proceedings, the court cannot say that it was clearly established under applicable precedent such that a reasonable officer would know that this fact would be material to the magistrate's determination or negate a finding of probable cause. See Torchinsky, 942 F.2d at 260; Miller, 475 F.3d at 627. Under the circumstances known to Cain at the time, the fact that Ferrara was trying to evict Driggers may well have lent credence to Driggers's accusations that Ferrara had made sexual advances toward her in exchange for rent and that she had rebuffed him. While the Seventh Circuit has recognized that a complaint of criminal activity on the part of a landlord by a tenant who is being evicted may trigger a duty to further investigate the putative victim's claim, the Fourth Circuit does not appear to have addressed this point. Compare Hebron v. Touhy 18 F.3d 421, 423 (7th Cir. 1994) with McKinney, 431 F.3d at 419 (stating that defining the right as to be free from an unreasonable seizure is too general and observing that the circumstances faced by the officer must be considered) and Lefemine, 2012 WL 691434, at *4 (discussing applicable sources for clearly established rights).

Nor is there any other evidence supporting Ferrara's contention that Cain lied or had serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported to the magistrate. Ferrara's insistence that Cain perjured himself to the magistrate is utterly unsupported. The court observes as an initial matter that summary judgment

---

[7] Ferrara's evidence that *Magistrate Sullivan*, who signed the warrant for Ferrara's arrest, knew of the pending eviction proceeding is insufficient to establish knowledge on Cain's part.



was initially withheld on Ferrara's constitutional claims because he identified certain evidence he wanted to seek through discovery that he believed would show Cain had reason to know that Driggers was fabricating her story. Discovery now having been conducted, Ferrara has failed to present evidence supporting that theory. Rather, his current opposition to summary judgment is wholly founded on his theory that Cain failed to investigate what he characterizes as "hearsay" evidence from Driggers. (See Pl.'s Mem. Opp'n Summ. J. at 9-10, ECF No. 149 at 9-10) ("Defendant Cain, relying on nothing more than unreliable and uncorroborated hearsay, swore he had probable cause in order to secure a warrant . . . . [T]his sworn testimony is false and amounts to perjury."). As discussed above, law enforcement officers are generally permitted to rely on a putative victim's report of criminal activity. Ferrara provides no evidence that Cain deliberately or with a reckless disregard for the truth made material false statements or omitted material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading. See Miller, 475 F.3d at 627. Finally, the court observes that Cain in fact did attempt to corroborate Driggers's story by interviewing Cook. Although Ferrara seeks to diminish the relevance of this by arguing that Cook's statement that Ferrara came looking for Driggers on a daily basis did not corroborate any criminal activity, courts analyzing probable cause issues have recognized that "innocent behavior frequently will provide the basis for a showing of probable cause." Gates, 462 U.S. at 245 n.13.

Ferrara argues that the "bare bones" affidavits presented to the magistrate were misleading because they did not indicate that they were based on uncorroborated hearsay. This argument again rests on case law involving anonymous informants rather than victims. Moreover, while the affidavits presented to the magistrate in this case may not have been a model of specificity, they go far beyond the affidavits discussed in Gates and other cases addressing so-called "bare bones" affidavits; unlike

those, Cain's affidavits provided the time frame, location, and facts supporting the elements of the alleged crimes. Cf. Gates, 462 U.S. at 239 (discussing Nathanson v. United States, 290 U.S. 41 (1933) (holding that a sworn statement by an officer stating only that "he ha[d] cause to suspect and [did] believe that liquor illegally brought into the United States [was] located on certain premises" was insufficient) and Aguilar v. Texas, 378 U.S. 108 (1964) (holding that an officer's statement that the "affiants ha[d] received reliable information from a credible person and believe[d]" that heroin was stored in a home was insufficient)). And, while they do not specifically state that Driggers was the source of the information provided, the affidavits do not suggest that Cain was averring the facts presented therein of his own knowledge as a witness to the criminal activity but rather clearly imply that he was relaying a victim's statement secondhand. Further, Magistrate Sullivan testified in his deposition in the instant case that he was not misled by Cain's affidavits and that, even presented with the facts Ferrara contends Cain should have discovered by further investigation, probable cause for the arrest nonetheless existed. (Sullivan Dep. at 52:24-53:19, ECF No. 140-5 at 4-5.)

The Fourth Circuit has recognized that a subsequent determination of probable cause by a magistrate is instructive in a false arrest case, particularly in determining the question of qualified immunity. Torchinsky, 942 F.2d at 261 ("It is noteworthy that two different judicial officers in separate proceedings determined that [the officer] had demonstrated probable cause to support the arrest of [the plaintiffs]"). While Ferrara attempts to argue that the subsequent findings of probable cause by two different county magistrates should not be weighed in considering the reasonableness of Cain's actions because Magistrates Sullivan and Lynn were non-lawyers, such a contention, even if true, does not diminish the findings of the neutral and detached judicial officers. See generally Torchinsky, 942 F.2d at 262; Gates, 462 U.S. at 235-236 (observing that "search and arrest warrants have long been issued by persons who are neither lawyers nor judges" and that a "magistrate's

*PJG*

determination of probable cause should be paid great deference by reviewing courts") (internal quotations omitted).

As the Fourth Circuit observed in Torchinsky, the disruption and distress experienced by a person who is arrested for a crime he did not commit should not be minimized. Torchinsky, 942 F.2d at 264. Nonetheless, the Constitution holds law enforcement officers to a standard of reasonableness, not perfection. Qualified immunity protects those officers from bad guesses in a close-call situation. Lefemine, 2012 WL 691434, at *6. Here, Ferrara has produced no evidence showing that Cain acted with objective unreasonableness such as would strip him of qualified immunity. Rather, the record shows that Cain received a complaint from a victim, interviewed her as well as a neighbor who lived in the apartment complex where the acts allegedly occurred, and presented the facts as he knew them to a neutral and detached magistrate, who found probable cause. Another magistrate subsequently confirmed probable cause existed at Ferrara's preliminary hearings. Ferrara has failed to support his claim that Cain deliberately made false or misleading statements to the magistrate in procuring the arrest warrant. Accordingly, Cain is entitled to summary judgment on Ferrara's claims.

**C.  Defendant Hunt**

Ferrara's § 1983 claims against Sheriff Hunt fail because the record does not show that Hunt had any personal participation in the incidents surrounding Ferrara's arrest. A claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in

PJG

Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

Ferrara admitted repeatedly in his deposition that he sought to hold Hunt liable solely because he was "responsible" for Cain. (See, e.g. Ferrara Dep. at 104-107, 151, 172-179, ECF No. 140-3 at 6-9, 10, 18-24.) Under Iqbal, such a theory in unavailing under § 1983.

The court thus turns to Ferrara's claim for defamation against Hunt. In his Twentieth cause of action, Ferrara alleges a state law claim for defamation against Hunt for the publication of the news release on the Sheriff's website, including continued publication after the Sheriff was notified of the expungement order. Sheriff Hunt does not present any grounds in support of summary judgment regarding this claim; rather, he asks the court to remand the claim to the South Carolina Court of Common Pleas in the "event that this Court construes a state law claim" for defamation.[8]

Under applicable federal statutes, the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir.1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away."). "[T]rial courts enjoy wide latitude in determining whether

---

[8] As noted above, the defendants removed this action.

or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan, 58 F.3d at 110. In determining whether to continue to exercise supplemental jurisdiction, the court should consider the following factors: (1) "convenience and fairness to the parties," (2) "the existence of any underlying issues of federal policy," (3) "comity," and (4) "considerations of judicial economy." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). While Ferrara's defamation case is grounded purely in state law, the court observes that the instant action has been pending in this court for well over two years and that the defendants elected to defend against all of Ferrara's claims in this court by removing it. Accordingly, the court recommends that this claim not be remanded to state court.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motions for summary judgment be granted as to all claims except for the defamation claim against Defendant Hunt, which should be set for trial.

                                                                                                                            Paige J. Gossett

March 19, 2012                                                                 UNITED STATES MAGISTRATE JUDGE
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).